NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 89

No. 2016-185

Paul Flint

v.

Department of Labor

Supreme Court

On Appeal from
Superior Court, Washington Unit,
Civil Division

October Term, 2016

Timothy B. Tomasi, J.

Matthew M. Shagam and Richard T. Cassidy of Hoff Curtis, Burlington, for Plaintiff-Appellant.

William H. Sorrell, Attorney General, and Todd W. Daloz, Assistant Attorney General,
  Montpelier, for Defendant-Appellee.


PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1.    **REIBER, C.J.**    A former employee of the Vermont Department of Labor (Department) appeals from a judgment on the pleadings denying his suit against the Department seeking unpaid overtime pay.  Employee first argues that he is entitled to overtime pay for hours worked in excess of forty hours per week because—through a 1994 revision to 21 V.S.A. § 384(b)(7) that refers to the federal Fair Labor Standards Act (FLSA)—the Legislature intended to provide state employees not only with minimum wage-and-hour rights, but also with a statutory private right of action to enforce those rights.  Employee next argues that state employees also have a private right of action to enforce those claimed rights through Article 4 of the Vermont Constitution.  Vt. Const. ch. I, art. 4.  We affirm.

¶ 2.     Employee worked at the Department from 2010 to 2014, and he claims to have worked 704 hours of overtime during this period.  After his termination, employee sued the Department on the basis that he had not been paid at the overtime rate of time-and-a-half for hours worked in excess of forty hours per week.  Employee initially brought two claims—one under 21 V.S.A. § 384(b)(7) and another under FLSA—but withdrew the FLSA claim after the State filed a motion to dismiss in which it argued that sovereign immunity prevented the claim.  The State later filed a motion for judgment on the pleadings. See V.R.C.P. 12(c) ("After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.").  The court granted the motion on the basis that 21 V.S.A. § 384(b)(7) "does not extend a statutory right to the overtime rate that [employee] seeks," but rather "plainly exempts State employees."  The court also concluded that Article 4 of the Vermont Constitution did not give state employees a private right of action to seek damages compensating them for unpaid overtime.  Vt. Const. ch. I, art. 4.

¶ 3.     Employee now appeals the court's judgment on the pleadings.  In reviewing the judgment, "we accept as true all factual allegations contained in the complaint and all reasonable inferences that can be drawn from those allegations." Sorge v. State, 171 Vt. 171, 174, 762 A.2d 816, 818 (2000).  This is because when the court assesses a motion for judgment on the pleadings, "all well pleaded factual allegations in the nonmovant's pleadings and all reasonable inferences that can be drawn therefrom are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false." Bressler v. Keller, 139 Vt. 401, 403, 429 A.2d 1306, 1307 (1981).  We therefore focus our analysis on the court's conclusions of law, which we review de novo. Anderson v. State, 2013 VT 73, ¶ 7, 194 Vt. 437, 82 A.3d 577 ("[W]e review the trial court's conclusions of law de novo.").  Regarding these conclusions of law, employee argues that the court erred because (1) 21 V.S.A. § 384(b)(7) does provide state employees with both minimum wage-and-hour rights and a statutory private right of action to enforce those rights, and (2) state

2

employees do have a private right of action to enforce those claimed rights through Article 4 of the Vermont Constitution. Vt. Const. ch. I, art. 4.

I.

¶ 4. We first address employee's argument that he is entitled to overtime pay because 21 V.S.A. § 384(b)(7) provides state employees with both minimum wage-and-hour rights and a statutory private right of action to enforce those rights. In relevant part, § 384(b)(7) reads:

> (b) . . . an employer shall not pay an employee less than one and one-half times the regular wage rate for any work done by the employee in excess of 40 hours during a workweek. However, this subsection shall not apply to:
>
> . . .
>
> (7) State employees who are covered by the federal Fair Labor Standards Act.

¶ 5. In interpreting a statute, our primary aim is always to determine the intent of the Legislature and implement that intent. See Miller v. Miller, 2005 VT 89, ¶ 14, 178 Vt. 273, 882 A.2d 1196 ("In construing a statute, our paramount goal is to discern and implement the intent of the Legislature."). In determining that intent, we begin by looking to the plain language of the statute. Tarrant v. Dep't of Taxes, 169 Vt. 189, 197, 733 A.2d 733, 739 (1999) ("[I]n our attempts to ascertain legislative intent we look for guidance in the plain meaning of the words used."). If the intent of the Legislature is apparent on the face of the statute because the plain language of the statute is clear and unambiguous, we implement the statute according to that plain language. See Harris v. Sherman, 167 Vt. 613, 614, 708 A.2d 1348, 1349 (1998) ("[W]here legislative intent can be ascertained on its face, the statute must be enforced according to its terms without resort to statutory construction."). As a corollary of this principle, we resort to other tools of statutory construction—such as legislative history—only if the plain language of the statute is unclear or ambiguous.

¶ 6. These well-established principles of statutory interpretation are particularly relevant in this case because employee specifically urges this Court to look beyond the plain

language of § 384. In effect, he concedes that, on its face, the statute forecloses its application to state employees such as himself. However, he further argues that, in light of federal and state case law since the statute's revision, this plain language does not accurately represent the intent of the Legislature when it revised the statute. See In re S.B.L., 150 Vt. 294, 301, 553 A.2d 1078, 1083 (1988) ("We must look not only at the letter of a statute but also its reason and spirit."); Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49, 527 A.2d 227, 228 (1986) ("[T]he paramount function of the court is to give effect to the legislative intent."). Indeed, the overall thrust of his argument is that "[b]ecause the intent of the Vermont Legislature was to establish state employee wage-and-hour protections . . . [employee] is not 'covered' under FLSA for the purposes of his due process employment rights under § 384(b)(7)." In other words, he argues that state employees should not be considered "covered by" FLSA because the only remedies available through FLSA to those employees are inconsistent with the intent of the Legislature when it passed § 384 in its present form.

¶ 7.    Before directly addressing employee's argument, we first determine that the plain language of § 384 is clear and unambiguous. State employees generally are "covered by the federal Fair Labor Standards Act." 21 V.S.A. § 384(b)(7). The Code of Federal Regulations specifies that FLSA's 1974 amendments "extended coverage to virtually all of the remaining State and local government employees who were not [previously] covered." 29 C.F.R. § 553.3 (emphasis added). Because FLSA explicitly extends employment protections to state employees, this provision of the Code of Federal Regulations answers the questions of (1) whether state employees are "covered by" FLSA and (2) whether § 384 is clear and unambiguous.

¶ 8.    There are two primary exceptions for state employees who are not "subject to the civil service laws of the employing State or local agency," 29 C.F.R. § 553.10, but neither apply. One exception is for "elected officials and their appointees," 29 C.F.R. § 553.11, and the other is

for "employees of legislative branches."  29 C.F.R. § 553.12.  Here, employee does not qualify under either exception, nor does he argue that he does so.

¶ 9.    It is therefore clear both that employee is included in the § 384(b)(7) exception for state employees and that this exception is a defining feature of § 384.  Nevertheless, because employee's argument touches on the development of both FLSA and § 384(b)(7) and places the two in historical context, we must address employee's argument that state employees should not be considered "covered by" FLSA or included in the § 384(b)(7) exception for state employees.  Moreover—although not necessary for our analysis—this historical context provides further support for our dual holdings that (1) state employees are generally "covered by" FLSA and (2) § 384(b)(7) does not provide employee with minimum wage-and-hour rights or a statutory private right of action to enforce those rights.

¶ 10.   As originally passed by Congress in 1938, FLSA did not generally cover state government employees.  But with an amendment in 1974, it did—with the two previously noted exceptions for "elected officials and their appointees" and "employees of legislative branches." 29 C.F.R. §§ 553.11, 553.12; see also Nat'l League of Cities v. Usery, 426 U.S. 833, 836 (1976) ("The original Fair Labor Standards Act passed in 1938 specifically excluded the States and their political subdivisions from its coverage.  In 1974, however, Congress enacted the most recent of a series of broadening amendments . . . [that] extended the minimum wage and maximum hour provisions to almost all public employees employed by the States and by their various political subdivisions."), overruled by Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528 (1985).  Two years later, the U.S. Supreme Court narrowed the effect of this amendment on the basis that it unconstitutionally co-opted the authority of state governments to structure how they conduct their traditional functions.  See Nat'l League of Cities, 426 U.S. at 852.  ("[I]nsofar as the challenged amendments operate to directly displace the States' freedom to structure integral operations in areas of traditional governmental functions, they are not within the authority granted

5

Congress by [the U.S. Constitution.]"). But just nine years later, the Court reversed course, overruling its previous decision and <u>holding that FLSA did in fact generally cover state employees</u>. <u>Garcia</u>, 469 U.S. at 546–47 ("We . . . reject, as unsound in principle and unworkable in practice, a rule of state immunity from federal regulation that turns on a judicial appraisal of whether a particular governmental function is 'integral' or 'traditional.' Any such rule . . . disserves principles of democratic self-governance.").

¶ 11.   Although this history established that FLSA's minimum wage-and-hour rights generally apply to state employees, it did not establish how those rights are enforced. That issue was resolved by three later cases—one binding precedent on this Court, and two persuasive in their analysis. First, in <u>Alden v. Maine</u>, the U.S. Supreme Court held that the sovereign immunity of states, as established by the U.S. Constitution, means that states are immune from all private suits in their own courts. 527 U.S. 706, 754 (1999) ("In light of history, practice, precedent, and the structure of the Constitution, we hold that the States retain immunity from private suit in their own courts, an immunity beyond the congressional power to abrogate by Article I legislation.").[1] But the Court further held that, even with sovereign immunity, states must comply with constitutionally valid federal statutes. <u>Id</u>. at 754-55. ("The constitutional privilege of a State to assert its sovereign immunity in its own courts does not confer upon the State a concomitant right to disregard the Constitution or valid federal law. The States and their officers are bound by obligations imposed by the Constitution and by federal statutes that comport with the constitutional design."). The Court then applied these holdings to the facts of the case—which was brought by Maine state employees seeking overtime pay through FLSA—to hold that the state employees did not have a private right of action to enforce FLSA's protections. <u>Id</u>. at 712 ("[T]he powers delegated to Congress under Article I of the United States Constitution do not include the power to subject

---

[1]   This expanded pre-existing case law that had established that states are immune from claims brought by private individuals in federal courts. See <u>Seminole Tribe of Fla. v. Florida</u>, 517 U.S. 44, 54 (1996).

nonconsenting States to private suits for damages in state courts . . . . [T]he State of Maine has not consented to suits for overtime pay and liquidated damages under the FLSA.").

¶ 12.    Next, in Coniff v. Vermont, the federal district court applied the Alden holdings to determine that Vermont state employees do not have a private right of action to bring FLSA suits against the state. 2013 WL 5429428, at *9 (D. Vt. Sept. 30, 2013) ("Because the State has not waived its sovereign immunity against suits brought under the FLSA, it retains its sovereign immunity in this case."), aff'd sub nom. Beaulieu v. Vermont, 807 F.3d 478 (2d Cir. 2015). In doing so, the court specifically found that § 384(b)(7) did not waive the state's sovereign immunity. Coniff, 2013 WL 5429428, at *6. ("[W]hen Vermont's express waiver standard is considered alongside the language of § 384(b)(7), the mere reference to FLSA coverage does not effect a waiver of sovereign immunity."). These holdings were affirmed by the United States Court of Appeals for the Second Circuit in Beaulieu v. Vermont, which further observed that the exception in § 384(b)(7) for state employees who are covered by FLSA "implicitly acknowledges" the state's legal obligation to abide by FLSA but "says nothing about how that obligation may be enforced." 807 F.3d at 484-85. More to the point, the court cogently summarized the difference between being covered by FLSA and having a private right of action under FLSA: "The fact that Vermont state employees are covered by the FLSA does not mean that those employees are entitled to sue Vermont under the FLSA's private right of action." Id. at 485. Although these federal decisions are not binding on this court, their reasoning is persuasive.

¶ 13.    Faced with this persuasive case law, employee nevertheless argues that this Court should look past the plain language of § 384(b)(7) and determine that the statute does provide a private right of action. Essentially, he argues that before 1994, "state employees were statutorily excluded from coverage under Vermont's minimum wage and overtime law," so the mere fact that the Legislature amended § 384 in 1994 "shows that the Vermont Legislature intended for the State to be accountable to its employees for minimum wage-and-overtime wages." Employee further

7

argues that the Legislature's alleged intent has been thwarted because <u>Alden</u> subsequently established that state employees do not have a private right of action through FLSA to enforce their minimum wage and overtime rights. <u>Alden</u>, 527 U.S. at 706. He alleges that FLSA is "insufficient" to such an extent that "for wronged state employees seeking the wages to which they are entitled by state statute, FLSA effectively does not exist."

¶ 14. We disagree for several reasons. First, employee's requested construction of § 384(b)(7) would go against the statute's plain language. Indeed, it would convert an express exemption of state employees—which precludes those employees from a private right of action under Vermont's state minimum wage-and-hour statute—to an implied waiver of sovereign immunity—which would grant those employees a private right of action under FLSA. This would be an illogical reading of the statute, particularly in light of the requirement that any waiver of sovereign immunity must be express. See, e.g., <u>Amy's Enters. v. Sorrell</u>, 174 Vt. 623, 623, 817 A.2d 612, 615 (2002) ("Sovereign immunity precludes suits against the State for acts essentially governmental in nature, unless that immunity is <u>expressly waived</u>." (emphasis added)); <u>Jacobs v. State Teachers' Ret. Sys. of Vt.</u>, 174 Vt. 404, 408, 816 A.2d 517, 521 (2002) ("Because sovereign immunity is procedural, a state may choose to waive it in specified circumstances. Such waiver <u>must be accomplished expressly by statute</u>." (citation omitted) (emphasis added)); <u>LaShay v. Dep't of Soc. & Rehab. Servs.</u>, 160 Vt. 60, 67, 625 A.2d 224, 228 (1993) ("Sovereign immunity protects the state from suit unless immunity is <u>expressly waived</u> by statute." (emphasis added)).

¶ 15. Second, if the Legislature intended to ensure state employees a private right of action to enforce minimum wage and hour rights, it could have explicitly included such language in § 384 when it revised the statute in 1994. Later, it could have added such language in response to the Supreme Court's decision in <u>Alden</u> recognizing the State's immunity against such suits, or the federal court decisions in <u>Coniff</u> and <u>Beaulieu</u>, which concluded that 21 V.S.A. § 384(b)(7) does not amount to an express waiver of Vermont's immunity from a private right of action under

8

FLSA. See State v. Read, 165 Vt. 141, 147, 680 A.2d 944, 948 (1996) ("We . . . presume that the Legislature makes changes in the law in light of relevant judicial precedents and with knowledge of prior legislation on the same subject.").

¶ 16. Finally, and related to the above point, despite employee's characterization of FLSA as "insufficient" without a private right of action to enforce its protections, we find no legal basis to supplement § 384 with a more robust remedy for state employees aggrieved under FLSA.[2] See Shields v. Gerhart, 163 Vt. 219, 234-35, 658 A.2d 924, 934 (1995) ("Where the Legislature has provided a remedy, although it may not be as effective for the plaintiff as money damages, we will ordinarily defer to the statutory remedy and refuse to supplement it."). To do so would infringe on the lawmaking responsibilities granted to the Legislature by our constitutional structure. See Donoghue v. Smith, 119 Vt. 259, 267, 126 A.2d 93, 98 (1956) ("Courts are bound to declare the law to be that which the legislature, acting within its constitutional power, enacts . . . . If the provisions of a statute are unfair or unjust, the remedy is by a change of the law itself, to be effected by the legislature, and not by judicial action in the guise of interpretation."); see also Lecours v. Nationwide Mut. Ins. Co., 163 Vt. 157, 161, 657 A.2d 177, 179-80 (1995) (agreeing with appellants that proposed interpretation would align with purpose of statute but finding "no support in the statute or the legislative history" for proposed interpretation and refusing "to rewrite the statute" because "[i]f there is a better method for effectuating the legislative purpose, we leave it to the legislature to devise").

II.

¶ 17. We next address employee's argument that state employees have a private right of action to enforce those claimed rights through Article 4 of the Vermont Constitution. Vt. Const. ch. I, art. 4. On this point, employee contends that (1) Article 4 provides due process relief for

---

[2] Employees protected under FLSA may file a complaint with the federal Department of Labor, which may investigate that complaint and bring an enforcement action against an offending employer.

plaintiffs with statutory rights, (2) Vermont state employees have a statutory property right to minimum wages and hours, and (3) the federal Department of Labor wage complaint process does not meet Article 4 standards for due process protection of employees' rights. Specifically, he again points to the fact that he has no private right of action through FLSA and again contends that the only other remedy—filing a complaint with the federal Department of Labor—is not sufficient. In his estimation, the federal Department of Labor wage complaint process "from the outset is at best a chance at a remedy, not an actual remedy of right." He concludes by arguing that an Article 4 private right of action must exist here because state private rights of action "exist[] when there is a property right established without any particular means of enforcement."

¶ 18. Employee is correct that Article 4 provides due process protections for plaintiffs with statutory rights, but he is incorrect in his contention that Vermont state employees have a state law statutory property right to overtime pay. Article 4 reads:

> Every person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which one may receive in person, property or character; every person ought to obtain right and justice, freely, and without being obliged to purchase it; completely and without any denial; promptly and without delay; comformably to the laws.

Vt. Const. ch. I, art. 4. We have held that Article 4 is "the equivalent to the federal Due Process Clause." Quesnel v. Town of Middlebury, 167 Vt. 252, 258, 706 A.2d 436, 439 (1997). However, we have also held that Article 4 "does not create substantive rights," but rather "ensure[s] access to the judicial process." Shields v. Gerhart, 163 Vt. 219, 223, 658 A.2d 924, 928 (1995).

¶ 19. Employee cannot rely on Article 4 to create a property interest in claimed employment rights; Article 4 provides a remedy only if he can show that he has a pre-existing property interest in those employment rights. See Quesnel, 167 Vt. at 258, 706 A.2d at 439 ("There being no statutory or common-law cause of action for plaintiffs' injuries resulting from their son's death, plaintiffs have not been denied due process of law or their rights under Article 4."); see also Hallsmith v. City of Montpelier, 2015 VT 83, ¶ 10, 199 Vt. 488, 125 A.3d 882 ("To show a

10

violation of procedural due process, an individual must (1) identify a protected property right, (2) show that the state or a state actor has deprived the individual of that right[,] and (3) show that the deprivation was effected without due process."). Employee asserts that those pre-existing property rights have a statutory basis—that they come from § 384(b)(7). And as previously described, § 384(b)(7) explicitly excludes state employees from its protections because state employees' minimum wage and overtime rights are already covered by FLSA. Employee therefore has no state law right to overtime wages. The issue in this case is whether Vermont's minimum wage-and-hour statute provides employee a private right of action to seek overtime pay pursuant to the federal FLSA. For the reasons above, we conclude that it does not. To the extent that employee's argument challenges the procedures and remedies available through the federal FLSA, we need not address the issue as this is not a challenge to that federal law.

Affirmed.

FOR THE COURT:

_____

Chief Justice

11